UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| GLENFORD HARDY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 3:21CV800-PPS |
| ) | |
| NORFOLK SOUTHERN RAILWAY ) | |
| COMPANY, ) | |
| ) | |
| Defendant. ) | |

## OPINION AND ORDER

Glenford Hardy worked for Norfolk Southern Railway as a conductor in NS's railyard in Elkhart, Indiana. Hardy brings this action under the Federal Employer's Liability Act, 45 U.S.C. §51 *et seq.*, seeking damages for injuries allegedly sustained when another train ran into the parked locomotive in which Hardy and his fellow crew members were awaiting further instructions from the yardmaster. The matter is before me now on Hardy's motion seeking summary judgment on the issue of NS's liability for Hardy's injuries from the accident.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A party opposing summary judgment may not rely on allegations or denials in his or her own pleading, but rather must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010). Summary judgment "is the put up or shut up moment in a lawsuit, when

a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008).

## Undisputed Facts

Plaintiff Glenford Hardy started working as a freight conductor for Norfolk Southern in 2013 and worked consistently for NS through January 4, 2021. [DE 25 at ¶2.] On January 4, 2021, Hardy reported for work at 3:59 p.m. and was assigned to work job BE19 with locomotive engineer Brian Daron and conductor-trainee Nate West in NS's railyard in Elkhart, Indiana. [*Id*. at ¶3.] The BE19 job was assigned two locomotives and a caboose, and was intended to service various NS industrial clients in the Elkhart area. [*Id*. at ¶4.]

At approximately 5:15 p.m., Larry Sharp, a yardmaster who controlled the movements in the yard, directed the BE19 crew to proceed east to the "R yard Runner" track and stop their locomotives to wait for further instructions before they could leave the yard to start their industrial work. [*Id*. at ¶5.] Subsequently, Ryan Norberg assumed Larry Sharp's yardmaster position. During the turnover process, Sharp advised Norberg of the location of the BE19. [*Id*. at ¶6.] The yardmaster serves as ground traffic controller and is responsible for controlling the movement of engines, trains, and track equipment in the yard. [*Id*. at ¶7.]

NS employee Scott Sporner was assigned to work job BE21 that same day. [*Id*. at ¶8.] The BE21 job would perform work within the yard, primarily gathering, moving and eventually pushing railroad cars by use of a set of locomotives over a hill called a

2

"hump" to classify cars into tracks to make up future out-bound trains. [*Id*. at ¶9.]  At approximately 6:41 p.m., Sporner, the Remote Control Operator of job BE21, was advised via radio by yardmaster Norberg that he could move the three locomotives he had under his control east down the "R yard Runner" track to eventually move to another part of the yard to gather more railcars. [*Id*. at ¶10.]  The RCO of job BE21 operated his locomotives alone and by remote control device. [*Id*. at ¶11.]  RCO Sporner was required to comply with all applicable NS operating rules. [*Id*. at ¶12.]

Federal law codified at 49 C.F.R. §218.99 required that NS create an operating rule related to employees providing "point" of shoving movements. [*Id*. at ¶13.]  In order to comply, NS's operating rules included rule 215 and 850(3). [*Id*. at ¶14.]  These operating rules required that, prior to moving east down the R yard Runner track, the BE21 RCO be standing on the platform of the easternmost part of the locomotive (NS855) to provide "point protection" of this shove; in plain English this means the RCO is required to be in a position to actually see what was ahead of him on the track and stop short of any obstructions. [*Id*. at ¶17.]

Another federal regulation, 49 C.F.R. §218.35, is germane to this case. It requires that NS create an operating rule related to trains and railcars moving at restricted speed within yard limits. [*Id*. at ¶15.]  In order to comply, NS's operating rules included rule 93 which required that, prior to moving east down the R yard Runner track, the BE21 RCO follow "restricted speed" while operating his train by remote control. [*Id*. at ¶18.]  Restricted speed is defined by NS as "[a] speed that will permit stopping within half the

3

range of vision, short of train, engine, obstruction, railroad car, men or equipment fouling track...." [*Id.*, quoting DE 24-3 at 48.]

Beginning at 6:46 p.m., the BE21 RCO moved his locomotives east down the R yard runner track while he was inside the westernmost locomotive cab, rather than being on the platform of the easternmost locomotive as it moved east. [DE 25 at ¶19.] In other words, RCO Sporner was not on the "leading end" of his easterly movement. [*Id.*] The BE21 collided with the BE19 train that was parked on the R yard Runner track and occupied by plaintiff Glen Hardy and the others. [*Id.* at ¶20.] Hardy sustained injury as a result and was transported by EMS to Elkhart General Hospital Urgent Care. [*Id.* at ¶21.]

Immediately after the accident, NS conducted a post-incident investigation into the cause of the collision. [*Id.* at ¶22.] The investigation concluded that by sitting in the westernmost locomotive and not on the "point" or leading eastern edge of his movement, the BE21 RCO failed to protect the point of his shoving movement in violation of NS operating rules 215 and 850(e). [*Id.* at ¶23.] The investigation also concluded that by sitting in the westernmost locomotive of his train and not on the "point" or leading edge of the direction he was traveling, the BE21 RCO was unable to move at restricted speed that would have allowed him to stop in half the range of his vision of the BE19 job sitting on the same track, in violation of NS's restricted speed operating rules. [*Id.* at ¶24.]

4

Brian Stanley, who was the Superintendent of NS's Great Lakes division at the time of the accident, testified in his deposition that if RCO Sporner had complied with operating Rule 215's point protection requirements the collision would not have occurred. [DE 24-2 at 42 (Stanley Depo, p. 40 at ℓℓ.17-20).] Stanley also testified that if RCO Sporner had operated his shove that day within the restricted speed rules, the incident could not have occurred. [DE 24-2 at 45 (Stanley Depo, p.40 at ℓℓ.15-18).]

Plaintiff Hardy first saw the headlight from the BE21 approaching his position approximately three minutes before the collision. [DE 28 at ¶1.] During the time between when Hardy first saw the headlight from the BE21 approaching his position on the BE19 and when the subject collision occurred, Plaintiff Hardy took no action to dismount the BE19; but the BE19 did, in an effort to warn the BE21, flash its lights and blow its horn. [DE 28 at ¶11; DE 24-2 at 52 (Stanley Depo, p.50 at ℓℓ.18-24).] Superintendent Stanley agreed that it was reasonable for Hardy's crew to assume that RCO Sporner would follow applicable operating rules, would protect the point of his shove and follow restricted speed rules, and would not crash into their stopped locomotive. [DE 24-2 at 49-50 (Stanley Depo, p.47 ℓ.22-p.48, ℓ.13).]

**Discussion**

FELA is intended to provide "broad recovery" to employees in the covered industries. *Schmitz v. Canadian Pacific Ry. Co.*, 454 F.3d 678, 682 (7th Cir. 2006). "Because the Act was written to 'offer broad remedial relief to railroad workers,' the plaintiff's burden under the FELA is 'significantly lighter than in an ordinary negligence case.'"

5

*Jaranowski v. Indiana Harbor Belt Railroad Company*, 72 F.4th 744, 750 (7th Cir. 2023), quoting *Holbrook v. Norfolk Southern Ry. Co.*, 414 F.3d 739, 741-42 (7th Cir. 2005). "[T]he theory of the FELA is that where the employer's conduct falls short of the high standard required of him by this Act, and his fault, in whole or in part, causes injury, liability ensues." *Kernan v. American Dredging Co.*, 355 U.S. 426, 438-39 (1958). "*Kernan* thus established a bright-line rule that a FELA employer's violation of a statutory or regulatory duty gives rise to FLEA liability for a resulting employee injury, regardless of whether the statute or regulation was meant to protect against the particular harm sustained by the employee." *Schmitz*, 454 F.3d at 683.

FELA contains a provision that an employee's contributory negligence may reduce his damages "in proportion to the amount of negligence attributable to such employee," but not in cases where the employer's violation "of any statute enacted for the safety of employees contributed to the injury[.]" 45 U.S.C.A. §53. This provision has been interpreted to apply to violations not just of "statutes" but of regulations as well. "Generally, railroads are strictly liable if they fail to comply with FRA regulations." *Jaranowski*, 72 F.4th at 752. What's more, the negligence of the railroad's agents is attributed to the railroad: "[t]he Act holds railroads liable for an employee's injury if the railroad's negligence, *or that of its agents*, 'played any part, even the slightest, in producing the injury.'" *Bruce v. Norfolk Southern Railway Company*, No. 3:20-cv-00040-RLY-MPB, 2023 WL 3585814, at *3 (S.D.Ind. May 22, 2023) (emphasis added), quoting *Green v. CSX Transp., Inc.*, 414 F.3d 758, 765 (7th Cir. 2005).

The summary judgment record here presents a very straightforward determination. The undisputed facts support a conclusion as a matter of law that the negligence of RCO Sporner, in clear contravention of several safety regulations and NS operating rules, caused the collision that allegedly injured Hardy. In its defense, the railroad argues that there are genuine issues material fact "regarding whether Plaintiff's own negligence is the sole cause of his alleged injuries." [DE 26 at 2.] But the time for supposition is over; this is summary judgment where parties have to lay their cards on the table. And NS simply does not offer evidence that could reasonably support a conclusion that Hardy was negligent or that his conduct contributed *at all* to the collision of the trains or to his resulting injuries.

Hardy testified in his deposition that he saw the oncoming headlight, which caused no alarm because it is common practice to have multiple locomotives on the same track. [DE25-1 at 58, Hardy Depo., p. 58, ℓℓ.2-5).] He further testified that he assumed that the BE21 was being operated at restricted speed and point protected, and that it would stop short of impact with BE19. *Id*. at 58-59 (Hardy Depo., p.58, ℓ.21- p. 59, ℓ.9).] NS's own Superintendent acknowledges that Hardy reasonably assumed the BE21 would be operated according to safety rules and regulations so as to avoid any collision. [DE 24-2 at 49-50 (Stanley Depo, p.47 ℓ.22-p.48, ℓ.13).] At the point at which it became apparent this might not be so, the BE19 gave what warning it could in the form of flashing its lights and sounding its horn.

7

For some portion of the three minutes when Hardy was aware of the oncoming BE21, the situation was not alarming and warranted no emergency action at all.  NS does not offer evidence that radio communications or other measures were possible at the point Hardy and his crew realized the BE21 would not stop short of hitting the BE19.  Nor does NS offer evidence supporting a conclusion that Hardy failed to participate in any job safety briefing relevant to the BE21's collision with the BE19.  The reasonableness of Hardy's belief in the proper operation of the BE21 obviates any requirement that Hardy take protective actions such as attempting radio communication with the yardmaster or with the BE21, or attempting to dismount the BE19. There is no genuine dispute of material fact concerning Hardy's possible causal responsibility for the accident, certainly, but neither for his resulting injuries.

Because the RCO failed to operate the BE21 at restricted speed, and because he failed to operate the BE21 with point protection enabling him to see the BE19 stopped on the track ahead, the RCO collided the BE21 into the BE19.  This is more than a slight part in causing the resulting accident, and NS's liability is established.  Hardy's motion for partial summary judgment on the issue of liability will be granted.

**ACCORDINGLY:**

Plaintiff Glenford Hardy's Motion for Summary Judgment [DE 23] is GRANTED.

**SO ORDERED**.

ENTERED:  January 2, 2024.            /s/Philip P. Simon
                                      **PHILIP P. SIMON, JUDGE**
                                      **UNITED STATES DISTRICT COURT**